# IN THE COURT OF APPEALS OF IOWA

No. 23-1483
Filed December 18, 2024

**JUAN ANTONIO NINO-ESTRADA,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Woodbury County, Zachary Hindman, Judge.


　　The applicant appeals the summary dismissal of his second application for postconviction relief. **AFFIRMED.**


　　Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City, for appellant.

　　Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee State.


　　Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

Juan Nino-Estrada appeals the summary dismissal of his second application for postconviction relief (PCR) following his 2015 convictions for two counts of first-degree murder, one count of attempted murder, and one count of willful injury. The district court concluded Nino-Estrada's application was time-barred, which Nino-Estrada challenges, arguing the court misapplied the summary-judgment standards when deciding whether he established a ground-of-fact exception that would allow him to bring his PCR application outside the statute of limitations. He asks us to reverse the district court's ruling and remand for a trial on the merits of his application.

**I. Background Facts and Proceedings.**

On direct appeal, this court summarized the events of November 7, 2013, which led to Nino-Estrada's convictions, as follows:

> [Luis] Sanchez, a drug dealer, was in the attic room of his home conducting drug transactions while a group of people, including Nino-Estrada, gathered with him and smoked methamphetamine. At one point in the evening, an argument began between Nino-Estrada and Sanchez, and Nino-Estrada drew a gun and pointed it at Sanchez.
> Michael Delgado, who had been living in the basement of the home, entered the room pointing a gun at Nino-Estrada. After Nino-Estrada turned his gun on Delgado, they left the room and a scuffle ensued on the stairway landing outside the room. Four or five gunshots were fired. Sanchez went to [the] stairway landing's door and was shot in the knee by Nino-Estrada. Nino-Estrada chased Delgado back into the room and fired several shots at Delgado, who was attempting to hide behind a desk. Delgado, who had been shot in the leg and elbow, then attempted to crawl to the room's door. Nino-Estrada shot him in the back of the head.
> Nino-Estrada then turned his gun to Sanchez. The gun misfired when he pulled the trigger, and Sanchez grabbed Nino-Estrada and pulled him to the floor. As the two men fought, another person in the room attempted to stab Nino-Estrada but accidentally stabbed Sanchez in the back. Sanchez survived both the stabbing and the gunshot wound to his knee. Delgado died from his gunshot

wounds, as did Yolanda Valdez, a bystander who was hit by stray gunfire.

Nino-Estrada fled the house and drove to his girlfriend's apartment with both his gun and Delgado's gun in his possession. Law enforcement officers located Nino-Estrada at the apartment a short time later and transported him to the hospital for treatment of a gunshot wound to his leg. Afterward, he was transported to the police station and interviewed about the night's events. Nino-Estrada denied he had been at Sanchez's home, instead claiming he was shot while walking down the street.

*State v. Nino-Estrada*, No. 15-1386, 2017 WL 108283, at *1 (Iowa Ct. App. Jan. 11, 2017).

Nino-Estrada was charged with two counts of first-degree murder, one count of attempted murder, and one count of willful injury. He asserted a defense of justification; his attorney argued to the jury: "I never said the word self-defense or justification as far as I can recall. We all kind of know what that is. Basically it's here: If you don't fight, you die." After an eleven-day trial, the jury rejected Nino-Estrada's defense and found him guilty as charged on all counts.

In a motion for new trial filed with the district court, Nino-Estrada alleged he "discovered important and material evidence in [his] favor since the verdict which could not be reasonably discovered and produced at trial. The evidence is from a material witness involved in the trial." Nino-Estrada attached an affidavit from his sister, Erika Nino-Estrada, to his motion. It stated in part:

I did not get to tell everything that happened at my deposition regarding the facts of this case. [The prosecutor] stopped my deposition because he did not like what I was saying. I was trying to say other people had guns besides Juan. The other people who had guns were, Michael Delgado, Raymond, and Luis Sanchez. I also did not get to say at my deposition or trial that Juan was defending himself and me that day. I gave this information to the County Attorney. I texted my brother, Juan to come and get me that day. I was under the influence of methamphetamine on the day my deposition was read at trial. I told the County attorney I was going to

change my testimony that was in my deposition and he said and he said he would use my deposition at trial.

Erika also testified in support of Nino-Estrada's motion for new trial; on direct examination; she testified in part:

> Q. Did you tell anyone after—once the trial was over and [Sanchez] admitted to you that he and his friends were the ones who started that whole incident, did you tell anybody that?  A. No.
> Q. You didn't come back and tell [the prosecutors]?  A. Oh, yeah, I did mention it to them that as [Sanchez] meant [to] tell [the prosecutor] that he started it, that he was messing with my brother.
> Q. When did you tell that?  A. When we was in the third floor, the second time.
> Q. Is that before trial or—  A. Before trial.
> . . . .
> Q. And you believe that was here in the courthouse?  A. Um-hmm.
> Q. Is that a yes?  A. In their—in their office.
> Q. Is that a yes?  A. Yes.
> Q. And you said [Sanchez] told me he started it.  A. Yeah. They told me they were messing with him.
> Q. That's what you heard from [Sanchez], or that's what you told the prosecutors?  A. That's what I heard from [Sanchez], and I did mention it to them.
> Q. And what did they say?  A. They didn't say nothing.
> Q. Did you ever tell that to [Nino-Estrada's] attorney . . . ? A. Yes.  I told him that my brother was defending himself and me.
> Q. When was that?  A. It was before the trial.
> Q. Did you tell them, though, that [Sanchez] had admitted it? A. No.  I was scared.
> Q. So you were afraid of [Sanchez] at that time—  A. Yeah.
> Q. —and/or [Sanchez's] friends; is that correct?  A. Yes.
> Q. So that time when you were in trial and you said I can't remember, I can't remember, I can't recall, those answers, were they true that you couldn't recall because you were high, or you were afraid to give the right answers, or both?  A. Both.

The district court denied Nino-Estrada's motion for new trial, and he was sentenced to life in prison.

A panel of this court affirmed the convictions on direct appeal.  *See id.* Procedendo issued on March 30, 2017.

Nino-Estrada filed his first PCR application in 2018, which he later amended in February 2020. As part of his amended application, Nino-Estrada alleged there was "new evidence that Ramon Olague (Flacko)[1] want[ed] to recant [his] testimony and now testify that [Sanchez] ordered/yelled at [Delgado] to bring his weapon up to the attic where the methamphetamine transactions were occurring" before Nino-Estrada drew his gun—lending support to Nino-Estrada's claim his justification defense should have been better developed by his trial attorney. The district court ruled against Nino-Estrada on this claim because he "failed to do anything other than 'rest upon the mere allegations' in his application. In particular, he has not proffered any 'specific facts,' by 'affidavits or otherwise'" to establish the claim.[2]

Nino-Estrada filed his second application for PCR in 2022, and the State moved for summary judgment arguing that the application was time-barred. In his resistance, Nino-Estrada asserted his application met an exception to the statute of limitations because he had new evidence that could not have been discovered during the three-year window. He claimed:

> Two witnesses from the trial who observed the shooting have recanted their testimony. Exhibit 1 is written statement from Raquel Nino. She stated that she had a conversation with Raymond Orgatado known as "Flaco." He stated to her that his trial testimony about [Sanchez] being the aggressor in the incident was false and that Michael Delgado and Luis Sanchez were the aggressors. This testimony is key to [Nino-Estrada's] defense of justification. Raymond's reason for testifying falsely was because he felt

---

[1] At various times, this person is referred to as Flacko or Flaco. His name is also given as Ramon Olague and Raymond Orgatado. From context, we understand this to be a single person. We refer to him as "Flaco."

[2] Nino-Estrada appealed the district court's ruling, which we affirmed, but he did not specifically challenge the ruling as to this claim. *See generally Nino Estrada v. State*, No. 20-1651, 2022 WL 244840 (Iowa Ct. App. Jan. 27, 2022).

threatened into testifying against [Nino-Estrada]. *See* statement of Raquel Nino marked Exhibit 2.

Exhibit 3 is a written statement from Erika Nino Estrada. She states that she never saw [Nino-Estrada] with a gun before exiting the room and she did see Michael Delgado running up the stairs with a gun. This too is key evidence to support and corroborate [Nino-Estrada's] defense of justification showing that he was threatened with danger to his life and that he was not the first aggressor. Erika stated she was threatened with a perjury charge by the prosecution if she testified differently than her deposition testimony. She states that she was scared from telling the truth at trial.

He maintained the application should go forward for a ruling on the merits so the court could determine whether the recanted testimony was credible and required a new criminal trial.

The State filed a reply, in which it highlighted that Nino-Estrada raised the issue of Flaco's alleged recantation in his timely 2019 PCR application, while Erika's recantation was first raised as an issue in a post-trial motion to the criminal trial in May 2015 (before judgment was entered).

The district court granted the State's motion for summary judgment. It concluded that Nino-Estrada failed to establish that he could not have raised the grounds of facts contained in the statements he introduced from his sister, Erika, and Nino Raquel before the statute of limitations expired. More specifically, the district court reasoned:

[A]lthough Nino-Estrada's written witness statements could arguably be viewed as including explanations why neither of the purportedly recanting State's witnesses recanted prior to the entry of Nino-Estrada's convictions—namely, because of what they claim was improper pressure by the prosecutor—none of his witness statements, and nothing else in the summary judgment record, supports a conclusion that Nino-Estrada could not have raised the alleged recantations prior to the expiration of the [Iowa Code section] 822.3 limitations period. Erika, in her statement, says nothing about whether Nino-Estrada knew or could have known about her recantation prior to the expiration of the limitations period. And while

> Raquel's statements could support a finding that *Raquel* was unaware of Flaco's purported recantation until after the expiration of the limitations period, her statements likewise say nothing about whether Nino-Estrada knew or could have known about Flaco's purported recantation before Raquel did. Put simply, a reasonable fact finder could not conclude, from the evidence in the summary judgment record, that Nino-Estrada could not have learned of Erika's recantation and Flaco's purported recantation prior to the expiration of the [section] 822.3 limitations period—even viewing the summary judgment record in the light most favorable to Nino-Estrada, any conclusion about when Erika and (purportedly) Flaco first recanted, or about when Nino Estrada could have learned of their recantations, would amount to nothing more than speculation.

Nino-Estrada appeals.

## II. Standard of Review.

"We generally review [PCR] proceedings, including summary dismissals of postconviction-relief applications, for errors at law." *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). We apply "summary judgment standards to the statute-of-limitations issue." *Id.* at 143. This means "[w]e view the record in the light most favorable to the nonmoving party" and only conclude summary disposition was appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* at 142 (alterations in original) (citation omitted).

## III. Discussion.

Under the statute of limitations for PCR filings, "applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3 (2022). Procedendo issued on Nino-Estrada's direct appeal on March 30, 2017, so the PCR statute of limitations ran in March 2020. Nino-Estrada did not file this

application until 2022. So, unless an exception applies, his PCR application is time-barred.

Of course, there is an exception to the statute of limitations for "a ground of fact or law that could not have been raised within the applicable time period." *Id.* "The onus is on the applicant" asking for PCR outside the statute of limitations to "meet the 'obvious requirement' that he or she could not have raised the ground of fact within the limitations period." *Moon*, 911 N.W.2d at 143 (citation omitted). The applicant also has the burden to show that "the ground of fact is relevant to the challenged conviction." *Schmidt v. State*, 909 N.W.2d 778, 798 (Iowa 2018) (citation omitted). Within this context, "relevant" means "the type of fact 'that has the potential to qualify as material evidence for purposes of a substantive claim under section 822.2.'" *Id.* at 798–99 (citation omitted).

Here, Nino-Estrada relies on the three statements he introduced through exhibits to the district court to establish a new ground of fact. In exhibit 1, dated July 27, 2023, Raquel Nino stated that about one and a half years prior, she "was at a party house" and "ran into Raymond (Flaco) he stated that he needed to tell [her] the truth about what happened on" the day of the shootings. "[H]e stated that his whole testimony about [Nino-Estrada] during trial as being [aggressor] was bullshit and that his friends [Delgado and Sanchez] were the actual [aggressors]." In exhibit 2, dated the same day, Nino stated, "[A]lso on that day he Flaco also mention[ed] that he feels that he was [threatened] into testify[ing] against" Nino-Estrada. In exhibit 3, also dated July 27, 2023, Erika stated:

> I would like to clarify about the night of that incident that resulted in the conviction of my brother. I was present there my brother defended himself. During [trial] [the prosecutor] did tell me that if I

> changed my story from the deposition that he would charge [me] with p[e]rjury it scared me from telling the truth.
>
> I did not see my brother with a gun when he ran out the room. [Sanchez] shots [illegible] and I hear gun shots my brother + [Delgado] and come into the room. I saw [Delgado] running up the stairs with a gun.

Based on the date written on all three exhibits, and applying summary-judgment standards, the written statements upon which Nino-Estrada relies did not exist within the three-year statute of limitations. But the question is whether the *facts* in those statements could have been raised by Nino-Estrada within the appropriate window. *See Babino v. State*, No. 22-1501, 2024 WL 111803, at *4 (Iowa Ct. App. Jan. 10, 2024) (recognizing "the facts [the applicant] alleges as the basis for this PCR action relate to knowledge [a juror] had at the time of the underlying criminal trial . . .—they already existed throughout the three-year window"). A fact could have been raised within the limitations period if it was either known to the applicant or it could have been discovered with the exercise of due diligence during the statute-of-limitations window. *Quinn v. State*, 954 N.W.2d 75, 76 (Iowa Ct. App. 2020). And here, it is clear that the facts involving the alleged recantations were known before the statute of limitations expired in March 2020. As the State pointed out in its reply brief in the district court, Nino-Estrada first raised the issue of Erika's recantation in May 2015—before judgment was even entered—and Flaco's alleged recantation by at least the February 2020 amendment of his first PCR application.

So, even viewing the record in the light most favorable to Nino-Estrada, he cannot establish that the alleged recantations of Erika and Flaco are new grounds

of fact that he could not have raised within the limitations period.  For this reason, his second PCR application is time-barred and summary judgment is appropriate.

**AFFIRMED.**